IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JERRY SALISBURY, | : | CONSOLIDATED UNDER |
| | : | MDL 875 |
| Plaintiff, | : | |
| | : | Transferred from the |
| | : | Northern District of |
| v. | : | California |
| | : | (Case No. 12-03260) |
| | : | |
| ASBESTOS CORPORATION LTD., | : | |
| ET AL., | : | E.D. PA CIVIL ACTION NO. |
| | : | 2:12-60168-ER |
| Defendants. | : | |

O R D E R

**AND NOW,** this **28th** day of **January, 2014**, it is hereby

**ORDERED** that the Motion for Summary Judgment of Defendant

Huntington Ingalls (Doc. No. 4̶5̶) is **GRANTED in part; DENIED in**

**part.**[1]

_____

[1]    This case was transferred in July of 2012 from the
United States District Court for the Northern District of
California to the United States District Court for the Eastern
District of Pennsylvania as part of MDL-875.

Plaintiff Jerry Salisbury alleges that he ("Plaintiff")
was exposed to asbestos while serving in the Navy during the
period 1957 to 1979. Defendant Huntington Ingalls, Inc. (f/k/a
Northrop Grumman Shipbuilding, Inc., and hereinafter "Huntington
Ingalls") built ships. The alleged exposure pertinent to
Defendant Huntington Ingalls occurred during Plaintiff's work
aboard:

- USS Hornet (CV-12) (1961-65)
- USS Coral Sea (CV-43) (1969-70)

Plaintiff brought claims against various defendants to
recover damages for his asbestos-related illness. Defendant
Huntington Ingalls has moved for summary judgment arguing that
(1) it cannot be liable on any product liability claim, (2) it
had no duty to warn Plaintiff about any of the hazards aboard the
ship it built, (3) Plaintiff has no evidence of exposure for
which Defendant is liable, (4) it is immune from liability by way

———————————

of the government contractor defense, and (5) Plaintiff's claims
are barred by the maritime law statute of limitations. The
parties assert that maritime law applies.

## I.   Legal Standard

### A.   <u>Summary Judgment Standard</u>

Summary judgment is appropriate if there is no genuine
dispute as to any material fact and the moving party is entitled
to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion
for summary judgment will not be defeated by 'the mere existence'
of some disputed facts, but will be denied when there is a
genuine issue of material fact." <u>Am. Eagle Outfitters v. Lyle &
Scott Ltd.</u>, 584 F.3d 575, 581 (3d Cir. 2009) (quoting <u>Anderson v.
Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-248 (1986)). A fact is
"material" if proof of its existence or non-existence might
affect the outcome of the litigation, and a dispute is "genuine"
if "the evidence is such that a reasonable jury could return a
verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at 248.

In undertaking this analysis, the court views the facts
in the light most favorable to the non-moving party. "After
making all reasonable inferences in the nonmoving party's favor,
there is a genuine issue of material fact if a reasonable jury
could find for the nonmoving party." <u>Pignataro v. Port Auth. of
N.Y. & N.J.</u>, 593 F.3d 265, 268 (3d Cir. 2010) (citing <u>Reliance
Ins. Co. v. Moessner</u>, 121 F.3d 895, 900 (3d Cir. 1997)). While
the moving party bears the initial burden of showing the absence
of a genuine issue of material fact, meeting this obligation
shifts the burden to the non-moving party who must "set forth
specific facts showing that there is a genuine issue for trial."
<u>Anderson</u>, 477 U.S. at 250.

### B.   <u>The Applicable Law</u>

#### 1.   Government Contractor Defense (Federal Law)

Defendant's motion for summary judgment on the basis of
the government contractor defense is governed by federal law.  In
matters of federal law, the MDL transferee court applies the law
of the circuit where it sits, which in this case is the law of
the U.S. Court of Appeals for the Third Circuit. <u>Various
Plaintiffs v. Various Defendants ("Oil Field Cases")</u>, 673 F.
Supp. 2d 358, 362-63 (E.D. Pa. 2009)(Robreno, J.).

2

2.   State Law Issues (Maritime versus State Law)

The parties assert that maritime law applies. Whether maritime law is applicable is a threshold dispute that is a question of federal law, see U.S. Const. Art. III, § 2; 28 U.S.C. § 1333(1), and is therefore governed by the law of the circuit in which this MDL court sits. See Various Plaintiffs v. Various Defendants ("Oil Field Cases"), 673 F. Supp. 2d 358, 362 (E.D. Pa. 2009)(Robreno, J.). This court has previously set forth guidance on this issue. See Conner v. Alfa Laval, Inc., 799 F. Supp. 2d 455 (E.D. Pa. 2011)(Robreno, J.).

In order for maritime law to apply, a plaintiff's exposure underlying a products liability claim must meet both a locality test and a connection test. Id. at 463-66 (discussing Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 534 (1995)). The locality test requires that the tort occur on navigable waters or, for injuries suffered on land, that the injury be caused by a vessel on navigable waters. Id. In assessing whether work was on "navigable waters" (i.e., was sea-based) it is important to note that work performed aboard a ship that is docked at the shipyard is sea-based work, performed on navigable waters. See Sisson v. Ruby, 497 U.S. 358 (1990). This Court has previously clarified that this includes work aboard a ship that is in "dry dock." See Deuber v. Asbestos Corp. Ltd., No. 10-78931, 2011 WL 6415339, at *1 n.1 (E.D. Pa. Dec. 2, 2011)(Robreno, J.)(applying maritime law to ship in "dry dock" for overhaul). By contrast, work performed in other areas of the shipyard or on a dock, (such as work performed at a machine shop in the shipyard, for example, as was the case with the Willis plaintiff discussed in Conner) is land-based work. The connection test requires that the incident could have "'a potentially disruptive impact on maritime commerce,'" and that "'the general character' of the 'activity giving rise to the incident' shows a 'substantial relationship to traditional maritime activity.'" Grubart, 513 U.S. at 534 (citing Sisson, 497 U.S. at 364, 365, and n.2).

Locality Test

If a service member in the Navy performed some work at shipyards (on land) or docks (on land) as opposed to onboard a ship on navigable waters (which includes a ship docked at the shipyard, and includes those in "dry dock"), "the locality test is satisfied as long as some

3

portion of the asbestos exposure occurred on a vessel on navigable waters." <u>Conner</u>, 799 F. Supp. 2d at 466; <u>Deuber</u>, 2011 WL 6415339, at *1 n.1. If, however, the worker never sustained asbestos exposure onboard a vessel on navigable waters, then the locality test is not met and state law applies.

<u>Connection Test</u>

When a worker whose claims meet the locality test was primarily sea-based during the asbestos exposure, those claims will almost always meet the connection test necessary for the application of maritime law. <u>Conner</u>, 799 F. Supp. 2d at 467-69 (citing <u>Grubart</u>, 513 U.S. at 534). This is particularly true in cases in which the exposure has arisen as a result of work aboard Navy vessels, either by Navy personnel or shipyard workers. <u>See</u> <u>id.</u> But if the worker's exposure was primarily land-based, then, even if the claims could meet the locality test, they do not meet the connection test and state law (rather than maritime law) applies. <u>Id.</u>

It is undisputed that the alleged exposures pertinent to Defendant occurred aboard a ship. Therefore, these exposures were during sea-based work. <u>See</u> <u>Conner</u>, 799 F. Supp. 2d at 455; <u>Deuber</u>, 2011 WL 6415339, at *1 n.1. Accordingly, maritime law is applicable to Plaintiff's claims against Defendant. <u>See</u> <u>id.</u> at 462-63.

C.   <u>A Navy Ship Is Not a "Product"</u>

This Court has held that a Navy ship is not a "product" for purposes of application of strict product liability law. <u>Mack v. General Electric Co.</u>, 896 F. Supp. 2d 333, 345 (E.D. Pa. 2012) (Robreno, J.). As such, a shipbuilder defendant cannot face liability on a strict product liability claim. <u>Id.</u>

D.   <u>Navy Shipbuilder Negligence Under Maritime Law</u>

This Court has held that a Navy ship builder owes a plaintiff a duty of reasonable care under the circumstances. <u>Filer v. Foster Wheeler, LLC</u>, No. 12-60034 (Order dated January 28, 2014)(Robreno, J.). Whether this duty has been breached is a fact-driven analysis that must be considered on a case-by-case basis. <u>Id.</u>

4

E.   Causation Under Maritime Law

In order to establish causation for an asbestos claim under maritime law, a plaintiff must show, for each defendant, that, _inter alia_, he was exposed to asbestos for which the defendant is liable such that the asbestos was a substantial factor in causing the injury he suffered. Lindstrom v. A-C Prod. Liab. Trust, 424 F.3d 488, 492 (6th Cir. 2005); citing Stark v. Armstrong World Indus., Inc., 21 F. App'x 371, 375 (6th Cir. 2001). A mere showing that an asbestos product was present somewhere at plaintiff's place of work is insufficient. Id. Rather, the plaintiff must show "'a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural.'" Id. at 376 (quoting Harbour, 1991 WL 65201, at *4).

F.   Statute of Limitations Under Maritime Law

This Court has previously addressed the statute of limitations under maritime law. In Nelson v. A.W. Chesterton Co., the Court set forth, _inter alia_, the test for determining when an asbestos cause of action has accrued under maritime law:

> The statute of limitations for maritime torts is governed by 46 U.S.C. § 30106 (previously 46 U.S.C. app. § 763(a)), which provides, "Except as otherwise provided by law, a civil action for damages for personal injury or death arising out of a maritime tort must be brought within 3 years after the cause of action arose." A cause of action under general maritime law "accrues when a plaintiff has had a reasonable opportunity to discover his injury, its cause, and the link between the two." Crisman v. Odeco, Inc., 932 F.2d 413, 415 (5th Cir. 1991). Under the discovery rule, **"[w]hen the specific date of injury cannot be determined because an injury results from continual exposure to a harmful condition over a period of time, a plaintiff's cause of action accrues when the injury manifests itself."** McCain v. CSX Transp., Inc., 708 F. Supp. 2d at 498 (quoting Czyzewski v. Conrail, 1997 WL 9791 *2 (E.D. Pa. 1997)). The key inquiry is whether the plaintiff has knowledge of the injury and its cause. McCain, 708 F. Supp. 2d at 498 (citing United States v. Kubrick, 444 U.S. 111, 122-23, 100 S. Ct. 352, 62

L. Ed. 2d 259 (1979) (interpreting the Federal Tort
Claims Act)).

No. 10-69365, 2011 WL 6016990, at *1 (E.D. Pa. 2011) (Robreno, J)
(emphasis added).

     G.   <u>Government Contractor Defense</u>

       To satisfy the government contractor defense, a
defendant must show that (1) the United States approved
reasonably precise specifications for the product at issue;
(2) the equipment conformed to those specifications; and (3) it
warned the United States about the dangers in the use of the
equipment that were known to it but not to the United States.
<u>Boyle v. United Technologies Corp.</u>, 487 U.S. 500, 512 (1988). As
to the first and second prongs, in a failure to warn context, it
is not enough for defendant to show that a certain product design
conflicts with state law requiring warnings. <u>In re Joint E. &
S.D.N.Y. Asbestos Litig.</u>, 897 F.2d 626, 630 (2d Cir. 1990).
Rather, the defendant must show that the government "issued
reasonably precise specifications covering warnings-
specifications that reflect a considered judgment about the
warnings at issue." <u>Hagen v. Benjamin Foster Co.</u>, 739 F. Supp. 2d
770, 783 (E.D. Pa. 2010)(Robreno, J.)(citing <u>Holdren v. Buffalo
Pumps, Inc.</u>, 614 F. Supp. 2d 129, 143 (D. Mass. 2009)).
Government approval of warnings must "transcend rubber stamping"
to allow a defendant to be shielded from state law liability. 739
F. Supp. 2d at 783.   This Court has previously cited to the case
of <u>Beaver Valley Power Co. v. Nat'l Engineering & Contracting
Co.</u>, 883 F.2d 1210, 1216 (3d Cir. 1989), for the proposition that
the third prong of the government contractor defense may be
established by showing that the government "knew as much or more
than the defendant contractor about the hazards" of the product.
<u>See</u>, <u>e.g.</u>, <u>Willis v. BW IP Int'l, Inc.</u>, 811 F. Supp. 2d 1146
(E.D. Pa. Aug. 29, 2011)(Robreno, J.); <u>Dalton v. 3M Co.</u>, No. 10-
64604, 2011 WL 5881011, at *1 n.1 (E.D. Pa. Aug. 2, 2011)
(Robreno, J.). Although this case is persuasive, as it was
decided by the Court of Appeals for the Third Circuit, it is not
controlling law in this case because it applied Pennsylvania law.
Additionally, although it was decided subsequent to <u>Boyle</u>, the
Third Circuit neither relied upon, nor cited to, <u>Boyle</u>.

     H.   <u>Government Contractor Defense at Summary Judgment Stage</u>

       This Court has noted that, at the summary judgment
stage, a defendant asserting the government contractor defense

has the burden of showing the absence of a genuine dispute as to
any material fact regarding whether it is entitled to the
government contractor defense. Compare Willis, 811 F. Supp. 2d at
1157 (addressing defendant's burden at the summary judgment
stage), with Hagen, 739 F. Supp. 2d 770 (addressing defendant's
burden when Plaintiff has moved to remand). In Willis, the MDL
Court found that defendants had not proven the absence of a
genuine dispute as to any material fact as to prong one of the
Boyle test since plaintiff had submitted affidavits controverting
defendants' affidavits as to whether the Navy issued reasonably
precise specifications as to warnings which were to be placed on
defendants' products. The MDL Court distinguished Willis from
Faddish v. General Electric Co., No. 09-70626, 2010 WL 4146108 at
*8-9 (E.D. Pa. Oct. 20, 2010)(Robreno, J.), where the plaintiffs
did not produce any evidence of their own to contradict
defendants' proofs. Ordinarily, because of the standard applied
at the summary judgment stage, defendants are not entitled to
summary judgment pursuant to the government contractor defense.

## II.   Defendant Huntington Ingalls's Motion for Summary Judgment

### "Products Liability"

        Huntington Ingalls argues that, as a shipbuilder, it
cannot be liable on a "products liability" claim because this
Court ruled in Mack that a Navy ship is not a "product."

### No Duty to Warn

        Huntington Ingalls argues that, as a shipbuilder, it
had no duty to warn Plaintiff about any of the hazards aboard the
ships it built.

### Exposure / Causation

        Huntington Ingalls argues that Plaintiff has no
evidence of asbestos exposure for which it is liable.

### Government Contractor Defense

        Huntington Ingalls asserts the government contractor
defense, arguing that it is immune from liability in this case,
and therefore entitled to summary judgment, because the Navy
exercised discretion and approved reasonably precise
specifications for the products at issue, Defendants provided
warnings that conformed to the Navy's approved warnings, and the

Navy knew about the hazards of asbestos. In asserting this
defense, Huntington Ingalls relies upon the affidavit of Captain
Wesley Charles Hewitt.

Statute of Limitations

Huntington Ingalls argues that Plaintiff's claims are
barred by the three-year statute of limitations applicable under
maritime law. Specifically, it contends that Plaintiff knew of
the injuries at issue as early as 2003 and by 2008 at the very
latest, but failed to file this action until 2012. Defendant
contends that, as a result of a breathing test at the VA Medical
Center that too place in 2003 or 2004, Plaintiff applied for and,
in 2008, ultimately received a disability benefit for an
asbestos-related illness.

Defendant's Objections to Plaintiff's Evidence

In connection with its reply briefing, Defendant
Huntington Ingalls has asserted approximately a dozen objections
to Plaintiff's evidence, seeking to have portions stricken.

B. Plaintiff's Arguments

"Products Liability"

In response to Defendant's argument that it can face no
strict liability in a product liability case, Plaintiff argues
that a Navy ship should be considered a "product."

No Duty to Warn

Plaintiff contends that Defendant owed Plaintiff a duty
of reasonable care under the circumstances, which included
warning him of hazards aboard the ships at issue. Plaintiff cites
to testimony from expert Richard Cohen to support his assertion
that the Defendant should have known (and most likely did know)
of the hazards of asbestos at the time the ship at issue was
built. (Pl. Ex. 4, Doc. No. 50-5.)

Exposure / Causation

Plaintiff contends that Plaintiff was exposed to
asbestos from insulation aboard the ships at issue and that
Defendant is liable for injuries arising from this exposure. In
support of his assertion that he has identified sufficient

8

evidence to survive summary judgment, Plaintiff cites to numerous
pieces of evidence, some of which are summarized herein in
pertinent part:

- <u>Declaration of Plaintiff</u>
  Plaintiff provides testimony that he was
  exposed to respirable dust from original
  asbestos-containing thermal insulation while
  aboard the ships at issue in the 1960s. He
  states that he did not see or receive any
  warnings about asbestos aboard the ship.

  (Pl. Ex. 1, Doc. No. 50-2.)

<u>Government Contractor Defense</u>

     Plaintiff argues that summary judgment in favor of
Defendant on grounds of the government contractor defense is not
warranted because there are genuine issues of material fact
regarding its availability to Defendant. To contradict the
evidence relied upon by Defendant, Plaintiff has pointed to (a)
MIL-M-15071D, and (b) SEANAV Instruction 6260.005, each of which
they contend indicates that the Navy explicitly permitted (and
perhaps even required) warnings.

<u>Statute of Limitations</u>

     Plaintiff contends that his claims are not barred by
the statute of limitations. He asserts, instead, that he was
first diagnosed with asbestosis in 2011 (years after discovering
that he had breathing difficulties, which led to his filing of a
claim for disability benefits for an asbestos-related illness)
and, therefore, has two separate causes of action because
maritime law recognizes the "separate disease rule." Plaintiff
argues that Defendant is mistakenly interpreting this rule to
require that, for a plaintiff to have two causes of action – only
one of these may arise from a non-malignant disease (whereas both
of Plaintiff's illnesses were non-malignant diseases). In
asserting that the "separate disease rule" allows two separate
causes of action for two non-malignant diseases, Plaintiff cites
to a case that the MDL court relied upon in <u>Nelson</u>: <u>Wagner v.
Apex Marine Ship Management Corp.</u>, 83 Cal. App. 4th 1444, 1447
(2000). Plaintiff contends that he first learned of his
asbestosis diagnosis in 2011 – and that, if he knew (or should
have known) prior to that diagnosis that he had an asbestos-
related illness (such as pleural plaques), that was a separate

illness (affecting different organ systems of the body) that
created a separate cause of action.

Defendant's Objections to Plaintiff's Evidence

     Because Defendant's objections were submitted in
connection with its reply briefing, Plaintiff has not responded
to these objections.

Plaintiff's Objections to Defendant's Evidence

     In connection with his opposition brief, Plaintiff has
submitted objections to portions of Defendant's evidence.

### C.  Analysis

Objections to Evidence

     As a preliminary matter, the Court notes that it has
reviewed the parties' objections. The Court need not address each
and every objection herein and instead addresses in connection
with its analysis, only as appropriate, objections that are
outcome-determinative (i.e., entitle Defendant to summary
judgment) and meritorious.

"Products Liability"

     Plaintiff alleges that he was exposed to asbestos from
insulation aboard several ships manufactured by Defendant
Huntington Ingalls. Defendant contends that it cannot be liable
for any "products liability" claim because of this Court's
holding in Mack. It is true that this Court has held that a Navy
ship is not a "product" for purposes of application of strict
product liability law. Mack, 896 F. Supp. 2d at 345. As such, a
shipbuilder defendant such as Huntington Ingalls cannot face
liability on a strict product liability claim. Id. Accordingly,
summary judgment in favor of Defendant is warranted with respect
to Plaintiff's claims against it sounding in strict product
liability. Anderson, 477 U.S. at 248.

     However, the Court's holding in Mack does not preclude
liability for a shipbuilder on a claim sounding in negligence.
Therefore, the Court next considers, separately, Defendant's
potential liability and/or entitlement to summary judgment with
respect to Plaintiff's negligence claims.

No Duty to Warn / Exposure / Causation

    Huntington Ingalls argues that, as a shipbuilder, it
had no duty to warn Plaintiff about any of the hazards aboard the
ships it built. However, this Court has held that a Navy ship
builder owes a plaintiff a duty of reasonable care under the
circumstances. Filer v. Foster Wheeler, LLC, No. 12-60034 (Order
dated January 28, 2014)(Robreno, J.). As such, a shipbuilder
defendant such as Huntington Ingalls may be liable on a
negligence claim if Plaintiff shows that its failure to warn
about asbestos hazards on the ship was a breach of this duty that
caused Plaintiff's illness. Whether this duty has been breached
is a fact-driven analysis that must be considered on a case-by-
case basis. Id.

    Defendant Huntington Ingalls argues that Plaintiff has
no evidence of asbestos exposure for which it is liable.
Plaintiff has presented evidence that he was exposed to
respirable dust from thermal insulation aboard the ships at
issue. Plaintiff has presented evidence that Defendant knew of
the hazards of asbestos at all times relevant to this action,
including at the time the ship was built. It is undisputed that
Defendant installed asbestos insulation aboard the ship. It is
undisputed that Defendant did not warn of asbestos products (and,
specifically, asbestos insulation) it installed aboard the ship.

    Defendant contends that, unless Plaintiff can establish
that the asbestos insulation to which he was exposed is the same
asbestos insulation that Defendant originally installed aboard
the ship (as opposed to replacement insulation later installed by
the shipowner), it cannot be liable because Plaintiff cannot
establish causation between his injury and Defendant's failure to
warn about the insulation it installed.

    The Court disagrees. Regardless of who is ultimately
found to have installed the insulation, if the jury finds that
Defendant's failure to warn about the insulation that gave rise
to Plaintiff's injury was not reasonable under the circumstances,
then Defendant may be liable. If the jury finds that Defendant's
failure to warn about the insulation that gave rise to
Plaintiff's injury was reasonable under the circumstances, then
Defendant is not liable. It is the jury's role to determine
whether Defendant's failure to warn about the insulation at issue
(whether original or replacement insulation) was reasonable under

the circumstances, and whether that failure to warn was the cause of Plaintiff's injury. Accordingly, summary judgment in favor of Defendant is not warranted with respect to Plaintiff's negligence claims against it. Anderson, 477 U.S. at 248-50.

Government Contractor Defense

Plaintiff has pointed to evidence that contradicts (or at least appears to be inconsistent with) Defendant's evidence as to whether the Navy did or did not reflect considered judgment over whether warnings could be included with asbestos-containing products. Specifically, Plaintiff has pointed to (a) MIL-M-15071D, and (b) SEANAV Instruction 6260.005, each of which Plaintiff contends indicates that the Navy not only permitted but expressly required warnings. This is sufficient to raise genuine issues of material fact as to whether the first and second prongs of the Boyle test are satisfied with respect to Defendant. See Willis, 811 F. Supp. 2d 1146. Accordingly, summary judgment on grounds of the government contractor defense is not warranted. See Anderson, 477 U.S. at 248-50.

Statute of Limitations

The parties agree that maritime law sets forth a three-year statute of limitations. Defendant Huntington Ingalls argues that Plaintiff's claims are barred by that statute of limitations. Defendant does not specifically identify any evidence that Plaintiff knew or should have known more than three years prior to the filing of his action that he had a medical diagnosis of asbestosis. Instead, Defendant identifies evidence that Plaintiff was given a breathing test in 2003 or 2004 and was assisted by a "Veteran Service Officer" (a VA benefit specialist) in applying for asbestos-related disability benefits due to his breathing difficulty. Defendant contends that the evidence can be construed only to indicate that Plaintiff knew by 2008 at the latest that he had "sustained an injury sufficient to qualify for 30% disability benefits as a result of exposure to asbestos during his work in the U.S. Navy." (Mot. at 8.) Defendant has not identified any evidence that a medical diagnosis was required to obtain this disability benefit, or that a physician was even involved in the administration of the breathing test or attainment of benefits. To oppose Defendant's motion, Plaintiff has cited a December 2011 report from Dr. Daniel Powers, contending that this was the first time Plaintiff had any indication that he had asbestosis.

12

Under maritime law, a cause of action for an asbestos-related illness accrues when a disease "first manifests itself." See Nelson, 2011 WL 6016990, at *1. The specific point in time when Plaintiff knows or should have known of the presence of the disease ordinarily is an issue of fact. Here, Defendant contends that the asbestos-related illness claimed by Plaintiff first manifested itself as early as 2003 and by 2008 at the very latest. Plaintiff concedes that was the time he first experienced breathing difficulties and applied for and was awarded an asbestos disability benefit. Plaintiff, on the other hand, claims he first learned he was suffering from asbestosis in 2011, as reflected in the 2011 report of Dr. Powers. It is not apparent from the record relied upon by Defendant whether the disability benefits awarded to Plaintiff in 2008 were based on a claim of asbestosis or some other asbestos-related disease, and/or in the absence of medical testimony, whether experiencing breathing difficulties is a manifestation of the presence of asbestosis. Under these circumstances, there is a genuine dispute of material fact as to when Plaintiff knew or should have known that he was suffering from asbestosis. As such, summary judgment in favor of Defendant is not warranted on grounds of the statute of limitations. See Anderson, 477 U.S. at 248-50.

**D.   Conclusion**

Defendant Huntington Ingalls is entitled to summary judgment with respect to Plaintiff's strict product liability claims because a Navy ship is not a "product" within the meaning of strict product liability law.

With respect to Plaintiff's remaining negligence-based claims, Defendant Huntington Ingalls has not established that it is entitled to summary judgment on any of the other bases it has asserted. First, Defendant has failed to identify the absence of a genuine dispute of material fact with respect to Plaintiff's negligence claim because Plaintiff has identified sufficient evidence to support a negligence claim. Second, Plaintiff has produced evidence to controvert Defendant's proofs regarding the availability to Defendant of the government contractor defense. Finally, Defendant's evidence does not establish that Plaintiff's claims are barred by the statute of limitations applicable under maritime law and, at best, establishes only that there is a genuine dispute of material fact regarding this issue.

E.D. Pa. No. 2:12-60168-ER          **AND IT IS SO ORDERED.**

                                    **EDUARDO C. ROBRENO, J.**

---

Accordingly, with respect to Plaintiff's negligence claims, summary judgment in favor of Defendant Huntington Ingalls is not warranted.

14